310

The People of the State of Illinois, Defendant in Error, *vs.* Prentis Hampton, Plaintiff in Error.

*Opinion filed November 30, 1961.*

Frank E. Glowacki, of Chicago, appointed by the court, for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach, Assistant Attorney General, and John T. Gallagher and Leo F. Poch, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Solfisburg delivered the opinion of the court:

Prentis Hampton was indicted for the unlawful sale of narcotic drugs. He received a bench trial, was found guilty, and sentenced to the penitentiary for a term of ten years to life. On defendant's writ of error we now review his conviction.

On September 26, 1958, Robert Buonauro, an informer

and narcotic addict, met with police officers William Alexander, William Wilson, John D. Allegretti, and John Urso. Buonauro was searched, then given ten dollars in marked bills, and was accompanied by the four officers in a squad car to the vicinity of Ashland and Madison Streets, in the city of Chicago. Buonauro testified that he walked to Ada and Madison where he left officer Alexander who stationed himself on the northwest corner of the intersection. Buonauro then proceeded to the northeast corner where he approached the defendant and Gloria Hampton, his wife, also a defendant, but not a plaintiff in error. He asked them both if they had any "stuff" and said that he wanted "two five-dollar decks." Defendant then told Buonauro to walk up the street about twenty-five feet. After he had walked up the street, Prentis and Gloria Hampton walked up to him together, she gave him "two five-dollar decks" (narcotics) and he gave her the money, which she then gave to Prentis. Thereafter, Buonauro walked to the squad car where he gave Allegretti the two packages.

Officer Alexander testified that when he and Buonauro reached the northwest corner of Ada and Madison they saw Gloria and Prentis Hampton standing together on the northwest corner. Buonauro left him, walked up to the Hamptons, had a conversation with them, and then walked away. They followed, came up to him, and Gloria handed something to Buonauro who then handed something to her. She then handed something to Prentis when Buonauro was three or four feet away. Alexander then placed the Hamptons under arrest, and Wilson, another officer, searched Prentis Hampton and took the marked money from his shirt pocket. On cross-examination Alexander stated that he observed everything from a distance of 30 feet.

Gloria Hampton admitted, while testifying, that she sold narcotics to Buonauro at the time and place involved but denied that her husband had any knowledge of the transaction while it was taking place. She, however, testi-

fied that her husband knew she had the narcotics, that she gave the marked bills to him, and that Alexander took the bills out of his pocket. Prentis Hampton testified that he was getting a shoeshine when Buonauro approached Gloria and had a conversation with her which he, Hampton, did not hear. He saw Buonauro and Gloria walk up the street, but didn't see them do anything. After his shoeshine was finished, in four or five minutes, and after Buonauro had left Gloria, he approached her. She then informed him of what she had done and gave him the money.

The defendant contends that his arrest without a warrant merely because he was in the presence of a person reasonably believed by the officer to have committed a crime was unlawful, that bare suspicion that he may have committed a crime and the fact that it developed that he may be guilty of a crime does not justify the arrest, and that the evidence was not sufficient to prove his guilt beyond a reasonable doubt. He has cited Illinois cases in support of his contentions, but although we agree with the authorities cited, we deem them to be inapplicable to the facts as revealed by the testimony herein. As this was a bench trial, the judge was the trier of the facts and apparently, after observing the witnesses and passing on their credibility, rejected the testimony of the defense which tended to negate guilt, and accepted the evidence of the People as true. In the light of the evidence it cannot be said that the defendant was "merely" present or that there was a bare suspicion that he may have committed a crime. The court was warranted in finding that a common design to sell narcotics was proved and that whatever one does in furtherance of it is the act of the other. *People* v. *Glass,* 16 Ill.2d 595, 598.

A study of the entire record reveals that the defendant had a fair trial and was proved guilty beyond a reasonable doubt. The judgment of the criminal court of Cook County is, therefore, affirmed.

*Judgment affirmed.*